In the Matter of the Estate of JOHN PFORR, Deceased.

[No. 27,214; decided April 25, 1903.]

Will—Construction Against Intestacy.—The rule that a construction which involves intestacy will not be favored is a salutary one, and should be enforced where it can be applied.

Will—Rejection of Invalid Parts.—If the parts of a will whose validity are questioned can be removed so that the remainder of the will presents an intact instrument, expressive of the ultimate intention of the testator, then the court may declare the will void as to such rejected parts and executable as to the rest.

Will—Rejection of Clauses Suspending Distribution.—If among provisions valid in themselves are clauses illegal for attempting undue suspension or postponement, which are not essential to the final scheme of the testator, then they should be severed from the body of the will and the main idea preserved.

Will—Rejection of Clauses Suspending Distribution.—Where a testator's main scheme is valid, it is not destroyed by the presence of provisions effecting an illegal suspension if they are separable from the other provisions of the will and not essential to the harmony and proportion of the whole, for then they may be eliminated without destroying the general design.

Application for partial distribution by Margaretha Thornagel.

John J. Burt, for the applicant.

Pringle & Pringle, Wm. B. Pringle and E. J. Pringle, for the respondents, executor and executrix.

COFFEY, J. Margaretha Thornagel filed her petition on December 23, 1902, alleging that John Pforr, her brother, died in San Francisco on July 17, 1902, being a resident thereof and leaving a will dated January 27, 1902, which was admitted to probate on August 20, 1902; that Anna Pforr and Max Waizman were duly appointed executrix and executor of said will and qualified as such and received letters testamentary thereon, and have continued to act thereunder ever since and are now so acting.

The will is in words and figures as follows:

"I, John Pforr, of the City and County of San Francisco, State of California, do make, publish and declare this as my

last will and testament, hereby revoking all wills and testaments by me heretofore made, and I hereby appoint my niece, Anna Pforr of this City of San Francisco, to be the executrix, and Max Waizman, also of this city of San Francisco, to be the executor of this will and testament, and I direct that no bond shall be required of them as such Executrix and Executor.

"a. First: I give and bequeath to my said niece, Anna Pforr, all household furniture, books and pictures which I may possess at the time of my demise.

"a. Second: I desire and direct that my executrix and executor shall take in charge all my property, real and personal (except that which I hereinbefore bequeathed to Anna Pforr), and to collect all the rent and other income from the same and to defray all expenses thereon including interest on mortgages and to renew mortgages and to execute new mortgages thereon when necessary for the maintenance of the same for a term of 2 years from the day of my demise.

"a. Third: I desire that my executrix and my executor at the expiration of two years from the day of my demise shall have the property sold at public auction or otherwise and after paying all indebtedness standing against it, to divide the net proceeds of such sale into six equal parts or divisions and to distribute the same share and share alike to my heirs and devisees as hereinafter set forth.

"b. First: I give, bequeath and devise to my niece, Anna Pforr, of this City and County of San Francisco, California, one-sixth part of my estate.

"b. Second: I give and bequeath to my sister, Fredericka Waizman, wife of Max Waizman of this City and County of San Francisco, California, one-sixth of my estate.

"b. Third: I give and bequeath to my sister, Margaretha Thornagel, wife of George Thornagel of this city and county of San Francisco, California, one-sixth part of my estate.

"b. Fourth: I give and bequeath to my brother, Christian Pforr, of Santa Clara County, State of California, one-sixth part of my estate.

"b. Fifth: I give and bequeath to my brother, John Pforr, junior, of Half Moon Bay, San Mateo County, California, one-sixth part of my estate.

"b. Sixth: I give and bequeath to the heirs of my deceased sister, Elizabeth Keller of the City and County of San Francisco, Sonoma County and Napa County, State of California, one-sixth part of my estate.

"JOHN PFORR.

"1. On this 27 day of January, A. D. 1902, the above named John Pforr in our presence, signed and sealed this instrument and published and declared the same to be his last will and testament, and we, at his request and in his presence and in the presence of each other have hereunto subscribed our names as witnesses.

"CHAS. L. QUAST.
"C. E. C. SCHWARZ."

The petition further recites that all of the legatees and devisees mentioned in said last will and testament were at the time of the execution of said last will and testament and at the time of the death of said deceased over the age of majority, and none of them were, nor was either of them, at either of said times, minors or a minor; that she is advised and believes, and therefore alleges, that the trust or disposition attempted to be created or made by said portion of said last will and testament was, and is, void in its inception, and that all of the property therein mentioned, at the death of said John Pforr, deceased, passed to and vested in his heirs at law; and that she is advised and believes, and therefore alleges, that she is entitled to have distributed to her, as a sister and heir at law of said deceased, an undivided and one-fifth part of the real estate described in the inventory on file herein, and belonging to the estate of said deceased, and she is also advised and believes, and therefore alleges, that she is entitled to have distributed to her one-fifth part of all of the personal property belonging to the estate of said deceased, now in the hands of the executrix and executor, save and except the household furniture, books and pictures mentioned in said clause or portion of said last will; that the estate of said John Pforr is not indebted in any further or greater sum than twenty-five thousand dollars ($25,000), and that the whole of said indebtedness is secured by mortgages upon said real property; and the aforesaid portion of said property may be allotted and distributed to her without loss to the creditors of said estate, or

any of them, and she is ready and willing and hereby offers to execute and deliver to the executrix and executor a bond in such sum as shall be desired by the court, with sureties to be approved by the judge thereof, payable to the executrix and executor, and conditioned for the payment, wherever requested, of her proportion of the debts due from said estate, not exceeding the value or account of the portion of said estate which may be distributed to her, or to which she may be entitled.

The executrix and executor respond to this petition in its essential averments by alleging that said estate is largely indebted, and that the encumbrances thereon and there against amount to approximately twenty per cent of the value thereof; that they consist of unsecured claims and promissory notes, and of promissory notes secured by mortgages upon the real property of said estate; that the said last will and testament of John Pforr, deceased, does not attempt to create a trust as to the whole or any portion of the property belonging to said decedent, but that the provision for the suspension of the distribution thereof for a term of two years is valid and not repugnant to the laws of the state of California; that at the death of said John Pforr, deceased, all of his property passed to and vested in the devisees of his will in accordance with the provisions thereof; that in accordance with the provisions of said will Margaretha Thornagel, the petitioner, is entitled to a one-sixth part of all of the estate of said John Pforr, deceased, except his household furniture, books and pictures, the same to be reduced to money by a probate sale, and one-sixth part of the net proceeds distributed to her; that no part of the estate of said John Pforr can or may be distributed to petitioner without loss to the creditors of the estate.

On behalf of petitioner it is contended that the only provisions of this testament that are valid are those appointing the executrix and executor, and disposing of the books, pictures, and household furniture, thus making the deceased intestate as to the remainder of the property.

It is argued in the same behalf that the testamentary language creates a trust, and deposits the legal fee of the estate in the executors for a fixed and absolute term; that under it the beneficiaries take no interest in the property, but only the

right to have the trust enforced, and if either of the bene-
ficiaries died before the termination of the trust, his interest
would remain in the estate and a resulting trust would arise in
favor of his heirs; that the will necessarily gives the fee in
trust, for the right to sell and convey the fee and also to mort-
gage is given, which could not be done unless the fee were
placed in the trustees.

It is further argued that the disputed dispository provisions
are void because they violate section 715 of the Civil Code,
and, also, section 724 of the same, since there is no disposition
made of the net proceeds during the period named, but they
are to be accumulated and cast into the corpus of the estate
to be divided at the end of the time indicated.

It is finally contended by petitioner that the court cannot
undertake to meddle with the will by attempting to mend it,
for such an instrument is contrary to public policy as estab-
lished by the statute, as vice permeates the entire scheme of
testator so completely that no part is effectual except the be-
quest of books, pictures and furniture, which is severable.

In connection with this last contention the rule of construc-
tion laid down by the appellate tribunal should be kept con-
stantly before the eyes of the judge of the trial court. It
must be remembered that the law abhors partial intestacy as
nature is said to abhor a vacuum; and, therefore, if we can
maintain the substantial integrity of the testamentary disposi-
tion by excising the unsound parts, it is our duty to save the
substance by eliminating what is nonessential. The supreme
court has expressed the rule in Estate of Fair, 136 Cal. 81, 68
Pac. 306, in these words:

"Of course, the general rule is well settled that where there
are valid and invalid clauses in a will, the question whether
or not the valid clauses can stand depends upon whether or
not the invalid ones are so interwoven with them that they
cannot be eliminated without interfering with and changing
the main scheme of the testator.

"Where a will is good in part and bad in part, the part
otherwise valid is void if it works such a distribution of the
estate as, from the whole testament taken together, was evi-
dently never the design of the testator. Otherwise where a

good part is so far independent that it would have stood had the testator been aware of the invalidity of all the rest."

The sections of the statute invoked in aid of this application read:

"Section 715. The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of the persons in being at the creation of the limitation or condition, except in the single case mentioned in section seven hundred and seventy-two."

"Section 724. An accumulation of the income of property, for the benefit of one or more persons, may be directed by any will or transfer in writing sufficient to pass the property out of which the fund is to arise, as follows:

"1. If such accumulation is directed to commence on the creation of the interest out of which the income is to arise, it must be made for the benefit of one or more minors then in being, and terminate at the expiration of their minority; or,

"2. If such accumulation is directed to commence at any time subsequent to the creation of the interest out of which the income is to arise, it must commence within the time in this title permitted for the vesting of future interest, and during the minority of the beneficiaries and terminate at the expiration of such minority."

Is there here a suspension of the absolute power of alienation under section 715, Civil Code? It is said by respondents that paragraph "a, second," does not interfere with the power of alienation, but merely directs that the executors take charge of and hold the property for the term of two years; it suspends the distribution, but any heir can alienate his share without impediment from its terms. Respondents say that if any period within which alienation is suspended be created by this testament, it is found in paragraph "a, third," but even that directs an alienation and does not prohibit one, and counsel cite the Toland Case, 123 Cal. 140, 55 Pac. 681, to sustain this view.

In the case at bar, paragraph "a, third," expresses the desire of the testator that at the expiration of two years from the day of his demise the executrix and executor shall have the property sold at public auction or otherwise, and after paying

all indebtedness standing against it to divide the net proceeds of such sale into six equal parts or divisions, and to distribute the same share and share alike to his heirs and devisees as thereinafter set forth.

It is said by respondents that this does not prohibit a sale by the executors within the two years, and is, therefore, not a suspension of alienation. In the Toland case the supreme court said her direction to sell the land "so soon as" the leases are canceled designates a point of time after which the beneficiaries might enforce a sale, but does not postpone the right to make the sale until the expiration of the terms created by those leases. It is equivalent to a direction to sell the land "whenever" the leases are "canceled." The word "canceled" is to be taken in its ordinary sense, and the use by her of that word instead of "expired," or "determined," justifies an inference that she had in her mind the possibility that the tenants might surrender the leases prior to the expiration of the term for which they were given. There was, therefore, no time after the death of the testatrix that an absolute interest in possession could not have been conveyed. The tenants could at any time by agreement with the executor cancel their leases, or unite with him in a conveyance, and give to the grantee the fee and the possession of the land.

From this it is argued that the question of distribution is distinct from alienations. Respondents call attention to the opinion in a case decided in a co-ordinate department, while presided over by Hon. Charles W. Slack, in the matter of the Estate of Nickolaus Becker, No. 15,939, which being brief is here inserted:

"The application is made on the theory that the provision of the will postponing distribution for five years from the death of the testator is void as an invalid suspension of the power of alienation. This question has arisen in New York under statutes similar to our own, and it is there settled that such a postponement of possession is not invalid: Chaplin on Suspension of the Power of Alienation, secs. 288, 295, 401, 410. Following the authorities the application must be denied. October 20, 1897.

"The sections referred to in Chaplin on Suspension of the Power of Alienation, are as follows:

"Section 288. There may be a valid power in trust to retain possession of land vested in devisees, manage the same, receive the rents and profits, pay charges from the same, and pay over the surplus rents to the legal owner. The performance of such duties does not necessitate a trust. Such a power does not occasion a suspension of the absolute power of alienation. The legal title is in the beneficiaries and they may at any time convey an absolute title. Consequently, such a power may be created for a term not measured by lives in being, or to begin after the full statutory period of suspension has expired. The principle is illustrated in a number of cases.

"Section 407. The whole matter may therefore be summed up as follows: Where the successive gifts of the same property, or of the enjoyment thereof, are each vested, with possession of anyone merely postponed until the termination of that preceding it; or where the gift is itself vested and is charged upon specific property; in these cases the fact that the property and all interests in it are all vested satisfies the rule. And where property given vests immediately in the donee as a present gift, of a portion of the existing corpus, with a mere prohibition against actual payment until a subsequent date, this right of the executor to retain is regarded as a power which does not interfere with vesting in absolute ownership, and does not interfere with the owner's free right to sell, assign or release, and, therefore, is not hostile to the rule concerning suspension of absolute ownership. This postponement of possession may be for the convenience of the estate, as where it is desirable to allow the executor two or three years, or more, or an unmeasured period in which to collect the assets, or turn them into cash to good advantage before the legatee shall have the right to enforce payment."

In reference to this decision counsel for petitioner says that if Judge Slack intended to hold that the testator could place the property in the executors, and direct them and their executors to hold it in probate for one hundred years, and prevent any distribution by the probate court until after that time, his decision is not sustained by the work cited by him, but is opposed by that of all other authorities on the subject.

As a matter of curiosity, if not particularly pertinent to this point, the will of Nickolaus Becker is here inserted, and it may be remarked incidentally that it seems to be (including the attestation clause) in the handwriting of John Pforr, the decedent testator herein:

"Know all men by these presents, that I, Nickolaus Becker, of the City and County of San Francisco, State of California, being of sound and disposing mind and memory, and not acting under menace, fraud, duress or undue influence of any kind or person whatsoever, do make, publish and declare this my last will and testament in the manner following, that is to say:

"First. I nominate and appoint John B. Lauinger and John Pforr, both of San Francisco, California, executors of this my last will and testament.

"Secondly. I desire and direct that my body may be preserved sufficiently long to be absolutely certain that death has occurred and then to be buried decently but without ostentation or extravagance.

"Thirdly. I declare that I have never been married, consequently have neither wife or child.

"Fourthly. I give, bequeath, and devise all property and estate of which I may die seized or possessed, or in which I may have any interest, real, personal and mixed, of whatsoever kind and character and wheresoever situate as follows:

"(a) One-sixth thereof to my sister, Marianna Herwig, residing at present in one of the Eastern States (but her exact place of residence is unknown to me).

"(b) One-sixth thereof to the children of my deceased brother Ferdinand Becker, now residing in this city—share and share alike.

"(c) One-sixth thereof to the children of my sister Antonia Ferrisch by her husband Adam Ferrisch—now residing in the State of New Jersey; share and share alike.

"(d) One-sixth thereof to my sister Valporia Heimerle, residing in Westminster, British Columbia.

"(e) One-sixth thereof to my sister Magdalena Becker, who, at last accounts, resided in Boston, Mass.

"(f) One-sixth thereof to my sister, Sophia Becker, who at last accounts resided in Boston, Mass.

"But no distribution of any part of my estate shall take place or be made until five years after my death. Should any of my sisters above named, as legatees and devisees be dead, before the expiration of said five years, leaving no bodily issue, the share to which she or they may have been entitled, shall be distributed among the other devisees and legatees, share and share alike, the children of any deceased sister or brother herein named taking their share, by representation and not as individual beneficiaries.

"Fifthly. I direct my executors to hold and possess all of my estate and property intact, for the period of five years from and after the date of my death and to see that the same shall not be distributed among the legatees and devisees above named until the expiration of that time.

"I desire that they the said executors shall keep the improvements on the real property in good repair and that they shall invest any surplus income and funds above expenses in good securities.

"Sixthly. I hereby revoke, cancel, and annul all other and former wills by me at any time made.

"In witness whereof, I have hereunto set my hand and subscribed my name in the City and County of San Francisco, this 19th day of December, 1892.

"NICKOLAUS BECKER.

"The foregoing instrument in writing was by the above-named Nickolaus Becker subscribed in our presence on the 15th day of December, A. D. 1892. And was by the said Nickolaus Becker at the time of subscribing the same published and declared to be his last will and testament, and thereupon we at his request and in his presence and in the presence of each other subscribed our names as witnesses thereto.

"JOE POHEIM,<br>
"1806 Pacific Ave., San Francisco.<br>
"J. GEORGE SHAEFER,<br>
"724½ Howard St., San Francisco."

In comparing these two documents a similarity of scheme may be perceived, and as they are both the product of the same penman, it is fair to presume that he wrote his own in 1902 on the plan of the one drawn in 1892, instructed by the ruling of Judge Slack in 1897. The testator here was the

draughtsman, apparently, as well as an executor of the Becker testament, and, as he was a man of affairs, properly assumed to understand how to construct such instruments, and undertook in the light of the law as he saw it and as it was interpreted by respectable authority to impose limitations upon the administration of his own estate such as were sustained in the matter of Becker.

These remarks may be regarded in the nature of surmise and speculation, and not necessary to the consideration of this case, but the reference to the record and the suggestion as to the probable facts in the other case may justify such side-light allusion or observations.

In the Becker case the heir at law petitioner asked for partial distribution on the ground that the trust attempted to be created by her in the fourth and fifth clauses of the will was void in its inception, and in violation of the provisions of section 716 of the Civil Code of California, and that all the property therein mentioned at the death of the testator passed to and vested in the heirs at law.

Section 716, Civil Code, says that every future interest is void in its creation which by any possibility may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed.

Judge Slack seemed to consider in his short statement of a conclusion that the New York cases settled the question, and that the attempted postponement of the period for distribution was not in contravention of the statutes. Petitioner challenges the correctness of this conclusion, but it may be said of his assertion that Chaplin does not support Judge Slack, but, on the contrary, and that work and all the authorities, so far as seen by petitioner, are opposed to the decision in the Becker case, that there is room for difference of opinion on this point.

The fact is, that decisions have been diverse, and that there is no such uniformity as to justify absolute assurance of authority on either side. It has been held that such provisions giving ample power to take in charge and manage the property, with a right to receive the rents and profits, could be very

well executed under such a power and occasion no suspension of alienation; and again, it has been decided that such a power as would seem to be created by "a, third" of the Pforr testament occasions suspension, because it operates to suspend the vesting of the fee until the power is executed or the estate is terminated.

In certain of the cases, the suspension was held to arise out of the particular provision of the will in hand, rendering imperative a sale at, and not before, a future date not limited by two lives.

In the case at bar, in clause "a, second," testator desires and directs that his executors shall hold up his estate "for a term of two years" from the date of his demise; and in clause "a, third" he desires that they shall, at the expiration of that period, sell the property at public auction or otherwise, and after discharging all debts against it divide and distribute the proceeds. Now, if this constitutes a case where there is a power which, for the time being, renders absolute alienation impossible, and where it can be neither released nor extinguished, then suspension results. Much stress is laid, in some cases, upon the fact that the power is imperative, and some important ruling rests upon this distinction. It is said that every trust power, unless its execution or nonexecution is made expressly to depend upon the will of the donee, is imperative, and imposes a duty the performance of which may be compelled in equity by the beneficiaries. This is the test: Is the power sought to be imposed imperative? If it is not imperative, but leaves a discretion possible to be perverted, such a contingency will not invalidate the power. Upon this question, appellate judges of eminence have differed diametrically.

Many cases are cited on either side of the proposition presented by petitioner, and each of the respective counsel undertakes to show that his opponent's citations are inapposite or to be discriminated from the case at bar; thus illustrating the remark sometimes made by appellate courts that little aid is derived from decisions in matters of testamentary construction; each controversy has its own peculiarities developing its own doubts and difficulties, not easily settled by reference to other cases.

The rule that construction of a will which involves intestacy is not to be favored is a salutary one, and where it can be applied it should be enforced.

If the parts of the will under censure be removed, and the remainder, freed from their operation, present an intact instrument expressive of the ultimate intention of the testator, then the court may declare the instrument void as to such paragraphs and executable as to the rest.

Take out clause "a, second" and "a, third" and we have the will in this shape:

"I, John Pforr of the City and County of San Francisco, State of California, do make, publish and declare this as my last will and testament, hereby revoking all wills and testaments by me heretofore made, and I hereby appoint my niece, Anna Pforr, of this City of San Francisco, to be the executrix and Max Waizman, also of this City of San Francisco, to be executor of this will and testament, and I direct that no bond shall be required of them as such executrix and executor.

"(a) First, I give and bequeath to my said niece Anna Pforr all household furniture, books and pictures which I may possess at the time of my demise.

"(b) First, I give, bequeath and devise to my niece, Anna Pforr, of this city and County of San Francisco, California, one-sixth part of my estate.

"(b) Second, I give and bequeath to my sister, Fredericka Waizman, wife of Max Waizman of this City and County of San Francisco, California, one-sixth of my estate.

"(b) Third, I give and bequeath to my sister, Margaretha Thornagel, wife of George Thornagel of this City and County of San Francisco, California, one-sixth part of my estate.

"(b) Fourth, I give and bequeath to my brother, Christian Pforr, of Santa Clara County, State of California, one-sixth part of my estate.

"(b) Fifth, I give and bequeath to my brother John Pforr, Junior, of Half Moon Bay, San Mateo County, California, one-sixth part of my estate.

"(b) Sixth, I give and bequeath to the heirs of my deceased sister, Elizabeth Keller, of the City and County of

San Francisco, Sonoma County and Napa County, State of California, one-sixth part of my estate.

"JOHN PFORR."

If the situation here presented is such that among provisions valid by themselves there are clauses illegal for attempting undue suspension or postponement, which are not essential to the final scheme of testator, then they should be severed from the body of the testament and the main idea preserved. The main idea here was to divide the estate into six equal parts, and this may be done after the exclusion of the infected portions of the instrument as well as if those portions were untainted.

It does not necessarily follow that the whole scheme is vitiated because certain separable clauses are unsound.

The rule has been stated that where the testator's main scheme is valid, it will not be destroyed by the presence of provisions which effect an illegal suspension, if these provisions are separable and not essential to the harmony and proportion of the whole; for then they may be cut out without destroying the general design.

In determining, in any given case, whether an invalid provision is or is not separable, it is said that importance may sometimes be attached to the form of the document.

If we regard form in this case, it will be seen upon inspection of the original that the instrument is so divided into paragraphs that any one may be removed without affecting the symmetry or stability of the entire structure. Certainly this is true of the paragraphs marked "a, second" and "a, third," as appears above from the document with those divisions discarded. Expunge these clauses and we still have the intention of the testator, validly expressed, to divide his estate in six parts, each part conveyed by its separate and sufficient words of devise.

The contention of petitioner that the language of the will, in the clauses expunged by this process, creates a trust and places the legal fee of the property in the executrix and executor for a fixed and absolute term, has some seeming support in the cases cited, although in most of them the distinction dwelt upon by respondents, as to the California cases particularly, that those authorities presented conditions of

absolute trusts created after an estate had been administered upon and by a decree of distribution following the testamentary terms, and are not analogous to the Pforr will, where the circumstances are entirely connected with powers in probate, cannot be ignored by the court; but in view of the premises recited in this opinion that the paragraphs in question may be eliminated without harm to the entire instrument, since their vice, if they be vicious, does not necessarily affect the whole scheme of testamentary disposition, which is complete and valid without them, the petition for partial distribution should be denied.

Estate of John Pforr was Before the Supreme Court of California in 144 Cal. 121, 77 Pac. 825.

The Fact that a Portion of a Will is Invalid does not necessarily vitiate the effect of the entire instrument. A will may be void in part and valid and effectual as to the residue. On the other hand, the void provisions of a will may destroy the otherwise valid provisions. If there are valid and invalid clauses in a will, the question whether the valid ones may be allowed to stand depends upon whether or not the invalid ones are so inextricably interwoven with them that they cannot be eliminated without interfering with or changing the main scheme of the testator. "When the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be": Estate of Fair, 136 Cal. 79, 68 Pac. 306; Estate of Pichor, 139 Cal. 682, 73 Pac. 606; Toland v. Toland, 123 Cal. 140, 55 Pac. 681.